D. Maimon Kirschenbaum
Leah Seliger
Lucas C. Buzzard
JOSEPH KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

**JENNIFER NIVAR,**

           **Plaintiff,**

      v.                         **CASE NO. 22-CV-07007**

**PROTEGA PHARMACEUTICALS, INC.,**

           **Defendant.**
--------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

JOSEPH & KIRSCHENBAUM LLP
Lucas Buzzard
Leah Seliger
45 Broadway, Suite 320
New York, NY 10006
212-688-5640

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

PRELIMINARY STATEMENT ……………………………………………………………1

COUNTERSTATEMENT OF FACTS.......................................................................... 2

LEGAL STANDARD……………………………...………………………………………4

ARGUMENT ……………………………………………………………………………5

    **A.**    PLAINTIFF PLAUSIBLY ALLEGES RETALIATION UNDER THE FALSE CLAIMS ACT ............. 5

        1. Plaintiff Sufficiently Pleads that her Belief was Subjectively Reasonable ……...……..6

        2. Plaintiff's Belief Was Objectively Reasonable …………..…………………………11

        3. Plaintiff's Complaints Were Connected to Her Belief That She Witnessed FCA
          Violations.………………..…………………………………………………...…12

    **B.**    PLAINTIFF PLAUSIBLY ALLEGES RETALIATION UNDER NYLL § 740 …………..…....14

    **C.**    PLAINTIFF PLAUSIBLY ALLEGES GENDER DISCRIMINATION/HOSTILE WORK
        ENVIRONMENT UNDER THE NYSHRL AND NYCHRL……..…………………………16

    **D.**    PLAINTIFF PLAUSIBLY ALLEGES RETALIATION UNDER THE NYSHRL AND
        NYCHRL…………………………………………………….……………………20

CONCLUSION ……………….…………………………………………………….22

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                       **PAGE**

*Adiram v. Catholic Guardian Servs.*, 2015 WL 5706935 (E.D.N.Y. Sept. 28, 2015) ------------- 13

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) -------------------------------------------------------------------- 4

*Beckles-Canton v. Lutheran Social Servs. of NY*, 2021 U.S. Dist. LEXIS 135371 (S.D.N.Y.

   2021) ------------------------------------------------------------------------------------------------------- 6, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ------------------------------------------------------- 4

*Dhaliwal v. Salix Pharms.,* Ltd., 752 F. App'x 99 (2d Cir. 2019) ------------------------------------ 12

*Garcia v. Aspira of New York, Inc.*, 2011 U.S. Dist. LEXIS 41708 (S.D.N.Y. 2011) -------------- 5

*Goldman v. Belden*, 754 F2d 1059 (2d Cir. 1985) -------------------------------------------------------- 4

*Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409 (2005) -- 6,10

*Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019) ------------------------------------------ 9,10,11

*Hall v. St. Jude Medical S.C., Inc.*, 326 F. Supp. 3d 770 (D. Minn. 2018) ----------------------------- 8

*Hart v. McKesson Corp.*, 602 F. Supp. 3d 575 (S.D.N.Y. 2022) ------------------------------------- 9

*Hopper v. Anton,* 91 F.3d 1261 (9th Cir. 1996) --------------------------------------------------------- 14

*Ibela v. Allied Universal*, 2022 U.S. App. LEXIS 12155 (2d Cir. 2022) ---------------------------- 15

*Jablonski v. Special Counsel, Inc.*, 2018 U.S. Dist. LEXIS 140859 (S.D.N.Y. 2018) ------------- 4

*Komorek v. Conflict Intl., Inc.*, 2024 U.S. Dist. LEXIS 64127 (S.D.N.Y. 2024) ------------------- 15

*Malanga v. NYU Langone Med. Ctr.*, 2015 U.S. Dist. LEXIS 153304 (S.D.N.Y. 2015) ----------- 6

*Moor-Jankowski v. Bd. of Trustees of NY Univ.*, 1998 U.S. Dist. LEXIS 12305 (S.D.N.Y. 1998)

   -------------------------------------------------------------------------------------------------------------- 14

*Murphy v. NY City Police Dept.*, 2025 U.S. Dist. LEXIS 252071 (S.D.N.Y. 2025) ---------------- 4

*Nuseiri v. Kosher Bravo Pizza LLC*, 2025 U.S. Dist. LEXIS 262954 (E.D.N.Y. 2025) ------------ 5

i

*Parisi v. Wipro Ltd.*, 2016 WL 6905987 (S.D.N.Y. 2016) --------------------------------------- 8

*Passoni v. Early Warning Servs., LLC*, 2025 U.S. Dist. LEXIS 124149 (E.D.N.Y. 2025) -- 15, 16

*Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459

    (E.D.N.Y. 2014) ---------------------------------------------------------------------------------- 5

*Swanson v. Battery Park City Auth.*, 2016 U.S. Dist. LEXIS 74570 (S.D.N.Y. 2016) ------------ 6

*United States ex rel. Chorches v. Am. Med. Response, Inc.,* 865 F.3d 71 (2d Cir. 2017) ---------- 5

*United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F. Supp. 3d 1106 (N.D. Ill. 2018)

    --------------------------------------------------------------------------------------------------11

*United States ex rel. Perri v. Novartis Pharms. Corp.*, 2020 U.S. Dist. LEXIS 66588 (D.N.J.

    2020) --------------------------------------------------------------------------------------------13

*United States ex rel. Sasaki v. N.Y. Univ. Med. Ctr.*, 2012 U.S. Dist. LEXIS 8672 (S.D.N.Y.

    2012) --------------------------------------------------------------------------------------------12

*Wooding v. Winthrop Univ. Hosp.*, 2017 U.S. Dist. LEXIS 90559 (E.D.N.Y. 2017)--------------16

## STATUTES

31 U.S.C. § 3730(h) -----------------------------------------------------------------------------7, 8, 17

42 U.S.C. § 1320a-7b-----------------------------------------------------------------------------------11

42 U.S.C. § 1320a-7b(g) -------------------------------------------------------------------------------15

42 U.S.C. s.1320a-7h(a)(1)(A) -------------------------------------------------------------------4, 9, 10

Fed. R. Civ. P. 12(b)(6) -------------------------------------------------------------------------------- 3

New York Labor Law § 740------------------------------------------------------------------------ 17, 19

## OTHER AUTHORITIES

56 Fed. Reg. 35952 -------------------------------------------------------------------------------------13

Dep't of Health & Human Servs., Office of Inspector Gen., Advisory Op. No. 12-05 (April 24,

2012) ----------------------------------------------------------------------------------------------------11

Plaintiff Jennifer Nivar respectfully submits this memorandum in opposition to Defendant Protega Pharmaceuticals, Inc.'s ("Protega's" or Defendant's") motion to dismiss her Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For all the reasons set forth below, Defendant's motion should be denied.

## PRELIMINARY STATEMENT

This case arises from Defendant's retaliation against Plaintiff, a high-performing pharmaceutical sales representative who repeatedly reported conduct she reasonably and in good faith believed violated federal law, including the Physician Payments Sunshine Act ("PPSA") and the Anti-Kickback Statute ("AKS"), as well as its discriminatory and retaliatory conduct toward Plaintiff in a highly sexualized workplace.

Plaintiff alleges that she reported, among other things, the fabrication of attendance records that concealed transfers of value to prescribing physicians in violation of the PPSA and conduct the reasonably believed involved unlawful kickbacks in violation of the AKS. She also reported gender-based favoritism, sexual misconduct by senior personnel that created a hostile work environment, and retaliation that followed immediately after she raised these concerns with management and Human Resources ("HR"). One week after escalating retaliation concerns to HR, Plaintiff was terminated.

Defendant's motion asks this Court to do precisely what Rule 12(b)(6) forbids: resolve factual disputes, reject reasonable inferences, and require Plaintiff to prove—rather than plausibly allege—both underlying statutory violations and retaliatory intent. Defendant repeatedly mischaracterizes the facts in the Complaint, invents a "jealousy" argument, and wholly ignores detailed allegations. Defendant also improperly demands that Plaintiff plead an actual False Claims

Act violation, rather than a reasonable and good faith belief of one in the context of a False Claims Act retaliation pleading.

At the pleading stage, Plaintiff need only plausibly allege that she engaged in protected activity, that Protega knew about it, and that Plaintiff was subjected to adverse action as a result. She has done so—multiple times over. Additionally, Plaintiff sufficiently pleads discrimination and retaliation under New York State and City law. Thus, Defendant's motion should be denied in its entirety.

## COUNTERSTATEMENT OF FACTS

Plaintiff alleges that she worked for Protega as a Key Account Manager from 2022 to May 2025. ECF #1 (Compl.) ¶ 9. Plaintiff was responsible for promoting Protega's drug RoxyBond to doctors for its approved uses. *Id.* ¶ 11. RoxyBond is a drug containing oxycodone, an opioid used for pain treatment. *Id.* ¶ 12. RoxyBond is heavily prescribed to patients who are covered by Medicare. *Id.* ¶ 44. During her employment, she became aware that her colleague, Jessica Kraszewski, was falsifying certain records in a way that obscured or concealed data that Protega, a manufacturer of drugs covered by Medicaid, must report to the U.S. government[1] pursuant to the PPSA. *Id.* ¶¶ 32-34, 44-55. In particular, rather than document specifically which doctors received drinks and meals from Protega and the value of those meals and drinks so that such payments could be accurately reported to the Government as the PPSA requires, Kraszewski fabricated documents to make it seem that she spent less money on more doctors. *Id.* ¶¶ 33-34, 50-52. Plaintiff also knew that Kraszewski was encouraging other pharmaceutical sales representatives to misrepresent or obscure the amount of money spent on each provider they entertained. Compl. ¶ 54.

---

[1]The statute requires that covered manufacturers, such a Protega, report specific data annually to the U.S. Secretary of Health and Human Services. This data includes, among other things, the name of the recipient of a transfer of value, the amount of the transfer of value, and a description of the nature of the transfer of value. 42 U.S.C. s.1320a-7h(a)(1)(A).

Plaintiff also learned that Kraszewski was cultivating inappropriate relationships and interactions with target physicians and seemingly encouraging them to prescribe Protega drugs by sending them nude pictures of herself. Compl. ¶¶ 35-40, 68-69. In or about February 2025, Plaintiff and Kraszewski took one of Protega's target medical providers, Dr. Swartz, out for dinner at a conference. *Id.* ¶ 30. During the dinner, Dr. Swartz revealed that Kraszewski had sent his partner naked pictures of herself. *Id.* ¶¶ 37-39. Kraszewski and Dr. Swartz then engaged in sexually charged conversation about "hot sales reps," the "scandalous" clothing Kraszewski wore to Dr. Swartz's office, and the naked pictures Kraszewski sent to his partner. *Id.* ¶¶ 36-39. The following day, Dr. Swartz approached Plaintiff and another Protega sales rep and reiterated that Kraszewski had in fact sent his partner naked pictures of herself. *Id.* ¶ 40. This information caused Plaintiff to become concerned that Kraszewski was attempting to induce providers to prescribe RoxyBond using highly inappropriate tactics. *Id.* ¶ 41.

Believing that her colleague was violating both the AKS and the PPSA, Plaintiff reported these actions to Protega. Compl. ¶¶ 45-47, 53, 78. Within days of learning of Kraszewski's unlawful conduct, Plaintiff reported what she learned to her direct supervisor. *Id.* ¶ 46. Plaintiff made it clear that she believed that the lack of a sign-in sheet to document who attended the dinner and received the food and drink was an attempt to obscure data required by the PPSA. *Id.* ¶ 47. Plaintiff also made clear that she believed that Kraszewski sending naked pictures to target doctors could potentially be a violation of the AKS. *Id.* ¶ 48.

In addition, Plaintiff reported that Kraszewski engaged in highly inappropriate sexual banter with Dr. Swartz making the work event feel highly inappropriate and uncomfortable. Compl. ¶ 47.

Plaintiff also learned that Kraszewski was having a sexual relationship with another male

3

Case 1:25-cv-07007-ALC     Document 21     Filed 01/16/26     Page 9 of 27

Key Account Manager. Compl. ¶¶ 20-23. Once Kraszewski was promoted to management, she actively supported this employee while simultaneously sabotaging Plaintiff's success. *Id.* ¶¶ 26-28, 75. Kraszewski cultivated an inappropriate sexual work environment with colleagues and medical providers alike. *Id.* ¶¶ 26-29, 68-70, 74. Plaintiff reported this discriminatory behavior and the sexualized work environment to Protega. *Id.* ¶¶ 76-79. Upon learning of Plaintiff's complaint, Kraszewski retaliated against Plaintiff and isolated her from her colleagues. *Id.* ¶¶ 58-63. When Plaintiff reported the retaliation to Protega's HR department, Protega fired her one week later. *Id.* ¶¶ 84, 86.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the Court may not weigh evidence, assess credibility, or choose between competing factual narratives; rather the court's function on a Rule 12(b)(6) motion is merely to determine whether the complaint itself is legally sufficient. *Murphy v. NY City Police Dept.*, 2025 U.S. Dist. LEXIS 252071, at *4 (S.D.N.Y. 2025) (citing *Goldman v. Belden*, 754 F2d 1059, 1067 (2d Cir. 1985)).

This principle applies with particular force to retaliation and discrimination claims under the New York City Human Rights Law. *See Jablonski v. Special Counsel, Inc.*, 2018 U.S. Dist. LEXIS 140859, at *7 (S.D.N.Y. 2018) (pleading standard for discrimination claims under the NYCHRL is even lower than the standard under federal law). Further, factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual,

4

sufficiency of a complaint." *Nuseiri v. Kosher Bravo Pizza LLC*, 2025 U.S. Dist. LEXIS 262954, at *2 (E.D.N.Y. 2025) (quoting *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468-69 (E.D.N.Y. 2014)). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail," but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Id*.

As set forth below, Plaintiff's Complaint pleads plausible claims of: (1) retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) ("FCA"), and New York's Whistleblower Act, N.Y. Labor Law § 740; (2) hostile work environment and gender discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"); and (3) retaliation under the NYSHRL and NYCHRL.

## ARGUMENT

### A.  PLAINTIFF PLAUSIBLY ALLEGES RETALIATION UNDER THE FALSE CLAIMS ACT

The FCA's anti-retaliation provision protects an employee from adverse action "because of lawful acts…in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations" of the FCA. 31 U.S.C. § 3730(h).

To state a claim for retaliation under the FCA, a plaintiff must plausibly allege that: (1) she engaged in protected activity; (2) the employer knew about that activity; and (3) the employer retaliated against her because of it. *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017). Here, all of Defendant's arguments as to the FCA retaliation claim are limited to the first element – whether Plaintiff engaged in "protected activity" within meaning of § 3730(h). *See* Def's Br. at 4-7.

Protected activity under § 3730(h) is "interpreted broadly," *Garcia v. Aspira of New York, Inc.*, 2011 U.S. Dist. LEXIS 41708, 2011 WL 1458155, at *4 (S.D.N.Y. 2011), and encompasses

"two kind[s] of conduct: (1) lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under the FCA, and (2) other efforts to stop one or more violations of the FCA," *Malanga v. NYU Langone Med. Ctr.*, 2015 U.S. Dist. LEXIS 153304, 2015 WL 7019819, at *2 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). In this second category, "a retaliation claim can be stated so long as the employee was engaged in efforts to stop an FCA violation, even if the employee's actions were not necessarily in furtherance of an FCA claim." *Swanson v. Battery Park City Auth.*, 2016 U.S. Dist. LEXIS 74570, at *6 (S.D.N.Y. 2016) (internal citations omitted).

An employee engages in protected activity under § 3730(h) when (a) she subjectively believes in good faith that her employer is engaged in fraud on the government, and (b) "a reasonable employee in the same or similar circumstances might believe" the same. *Beckles-Canton v Lutheran Social Servs. of NY*, 2021 US Dist LEXIS 135371, at *12 (S.D.N.Y. 2021) (internal citations omitted). Crucially, proving that an underlying violation of the FCA itself "is not an element of a § 3730(h) [retaliation] cause of action." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 n.1 (2005).

1.    **Plaintiff Sufficiently Pleads that her Belief was Subjectively Reasonable**

Here, Defendant argues that the facts alleged in the Complaint do not meet either the subjective prong or the objective prong of the "protected activity" analysis. With respect to the subjective prong, Defendant contends that: (1) Plaintiff does not allege she had a good faith belief that the conduct she reported constituted a violation of the Sunshine Act; and (2) there are insufficient facts alleging that Defendant satisfied the AKS's "knowingly and willfully" scienter requirement." Defendant is wrong on both fronts.

With respect to the PPSA, Defendant argues that Plaintiff's allegations concerning her complaints about Kraszewski's use of false and fabricated attendance sheets do not constitute a good faith belief that a PPSA violation occurred because it is a "reporting statute" that (a) does not "limit how much money a company . . . spends on doctors"; and (b) "does not mandate attendance sheets." Def's Br. at 4 (internal quotation marks omitted). Because Plaintiff's Complaint is "devoid of any allegations that Protega failed to meet its reporting obligations," Defendant maintains, her retaliation "claim should be dismissed." *Id.* at 4-5.

This argument is entirely disingenuous because it is the very information recorded on the attendance sheets that Protega uses to satisfy its documentation and reporting obligations under the PPSA. As Defendant itself acknowledges, the PPSA "requires manufacturers to track and report payments and 'transfers of value' to physicians." *Id.* at 5; *accord* 42 U.S.C. § 1320a-7h(a)(1)(A) (requiring manufacturers that provide "a payment or other transfer of value" to providers to report, *inter alia*, (a) the name and address of the provider; (b) the "amount of the payment or other transfer of value," and (c) the dates on which the payment or other transfer of value were provided). The Complaint asserts the same, stating that the PPSA requires the "document[ing] and report[ing] [of] all transfers of value provided to the health care providers." Compl. ¶ 33. The Complaint further alleges that whenever a Protega representative "entertains prescribing doctors, they are supposed to have a sign-in sheet *to document who attended the event and how much money was spent on the food, alcohol and entertainment.*" Compl. ¶ 32 (emphasis added).

Any fair reading of the Complaint reveals that it was the inaccurate, fabricated, or false *documentation* on the attendance sheets about the amounts spent on doctors – not the fact that Protega spent money on the doctors in the first place – that raised Plaintiff's good faith concerns

that PPSA violations were occurring. In particular, the Complaint alleges that Plaintiff became concerned about Ms. Kraszewski's failure to create a sign-in sheet "*to document* the evening with Dr. Swartz" because such "conduct . . . could clearly lead to a Sunshine Act violation." Compl. ¶ (emphasis added). This makes eminent sense – if the very attendance sheet Protega required its representatives to use to "track" payments to physicians was never prepared then Protega clearly could not "report" those payments to the Secretary as the PPSA requires. Similarly, when Kraszewski "fabricated sign-in sheets to mask the exorbitant expenses she incurred while entertaining doctors," Compl. ¶ 55, this too prevented Protega from accurately reporting the "amount of such payment or other transfer of value" to those doctors, 42 U.S.C. § 1320a-7h(a)(1)(A)(iii). Again, it was Krazewski's effort to *obscure* the amount spent on doctors on the attendance sheets Protega used to track such payments, not the fact that she spent money doctors, that reasonably "caused Plaintiff to believe that Ms. Kraszewski was violating the PPSA." Compl. ¶ 55.

As the above demonstrates, Plaintiff's concerns went to the heart of Protega's documentation and reporting obligations under the PPSA and are thus a far cry from the circumstances presented in the cases Defendant cites. *See* Def's Br. at 5. In *Parisi v. Wipro Ltd.*, for example, the court concluded that a plaintiff did not assert a reasonable belief that his employer was violating the PPSA because (a) the employer was not covered by the Sunshine Act in the first place; and (b) it was not objectively reasonable for the plaintiff to believe "in early 2013" that a PPSA reporting deadline would be missed when the relevant PPSA regulations "extended the first reporting deadline to March 31, 2014." 2016 U.S. Dist. LEXIS 162722, at *14-15 (S.D.N.Y. Nov. 23, 2016). Similarly, in *Hall v. St. Jude Medical S.C., Inc.*, unlike here, there were no allegations about "falsified expense reports" under the PPSA. 326 F. Supp. 3d 770, 782 (D. Minn. 2018). Instead,

the plaintiff simply alleged that the plaintiff refused to "sponsor an office party" without linking that refusal to a PPSA reporting violation as Plaintiff has clearly done here. *See id.*

Plaintiff's good faith belief that Kraszewski was violating the PPSA to obscure the amount of payments and other transfers of value to physicians is intertwined with Plaintiff's similar good faith belief that Kraszewski was violating the AKS. The AKS is a criminal fraud statute that proscribes the knowing and willful solicitation, receipt, payment, or offer of any form of "remuneration" in return for the purchase, lease, or order of any good or service for which payment may be made under a federal health care program. 42 U.S.C. § 1320a-7b(b)(1)-(2). The AKS is violated when something of value is given or paid "purposefully to induce or reward referrals of items or services payable by a Federal health care program." Dep't of Health & Human Servs., Office of Inspector Gen., Advisory Op. No. 12-05, at *3 (April 24, 2012). The AKS contains an "express link" to the False Claims Act – under § 1320a-7b(g) of the AKS, claims for payment that include "items or services resulting from a violation of [the AKS]" are false or fraudulent for purposes of the FCA. *See Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019) (noting that violation of the AKS "that results in a federal health care payment is a per se false claim under the FCA").

Here, Defendant argues that Plaintiff could not have had a good faith belief that Kraszewski was violating the AKS because the Complaint does not plead facts sufficient to establish the AKS's "knowing and willful" scienter element. Defs Br. at 5-6. The only authority Defendant cites in support of this argument, however, is *Hart v. McKesson Corp.*, a case that did not address the pleading standard for an FCA *retaliation* claim, but rather a freestanding FCA *qui tam* action premised on alleged AKS violations. *See* 602 F. Supp. 3d 575, 579 (S.D.N.Y. 2022). As noted above, to state a claim for retaliation under § 3730(h), Plaintiff is not required to plead or prove an

*actual* violation of the AKS (that resulted in a violation of the FCA). *See Graham Cty. Soil & Water Conservation Dist.*, 545 U.S. at 416 n.1.

Instead, all Plaintiff need allege to support her retaliation claim is that she had a reasonable, good faith belief that Krazewski's actions violated the AKS. That is precisely what the Complaint does. First, the Complaint connects the sale of RoxyBond to payments made by a federally funded healthcare program, alleging that compliance with the AKS is a condition of receiving payment from federally-funded healthcare programs, and that RoxyBond is "heavily prescribed to patients who are covered by Medicare." Compl. ¶¶ 43-44; *cf. Guilfoile*, 913 F.3d at 191 (allegations that an entity "regularly bills" federally-funded insurance programs like Medicare and Medicaid and paid kickbacks to secure the contracts under which it billed such programs found sufficient to "support the reasonable inference that the government was being billed" in connection with such contracts).

Next, the Complaint alleges that Plaintiff had a good faith belief that, in violation of the AKS, Kraszewski was offering "renumeration" to doctors to induce them to prescribe RoxyBond. This belief arose from two practices. First, the Complaint alleges that Kraszewski spent large amounts at a dinner with Dr. Swartz, one of RoxyBond's "target providers," Compl. ¶ 31, and then obscured the amount spent by first refusing to prepare an attendance sheet and then submitting a false attendance sheet that contained the names of additional doctors who were not actually present, thus "mask[ing] the exorbitant amount of money" she had spent "entertaining a single doctor," Compl. ¶ 51; *see id*. ¶¶ 34-35, 50, 52, 55. Second, the Complaint alleges that Kraszewski was providing nude pictures of herself to a doctor who was one of Protega's "Key Opinion Leaders." *Id.* ¶¶ 37-44, 69. These practices, which both involved doctors who were key targets for RoxyBond, led Plaintiff to reasonably believe that Kraszewski was providing "renumeration" to

induce these doctors to prescribe more RoxyBond in violation of the AKS.[2] *See* Compl. ¶¶ 41, 51, 55. Such allegations are sufficient to state a retaliation claim under § 3730(h). *See Guilfoile*, 913 F.3d at 194 (concluding that plaintiff was protected under the FCA when he engaged in conduct that could lead to an "FCA action based on the submission of claims resulting from an AKS violation"); *United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F. Supp. 3d 1106, 1115 (N.D. Ill. 2018) (holding that plaintiff engaged in a protected "effort to stop" an FCA violation when she told her supervisors "she was concerned that the transaction defendants were contemplating would violate AKS").Thus, Plaintiff's allegations, accepted as true, show that Plaintiff subjectively and reasonably believed she was witnessing PPSA violations and AKS-tainted marketing that risked causing false claims to be submitted to Medicare.

### 2.    Plaintiff's Belief Was Objectively Reasonable

In one throwaway paragraph, Defendant argues that Plaintiff's allegations do not satisfy the objective prong of the FCA "protected activity" test because she does not state "that an employee in a similar circumstance would have gathered that the [conduct Plaintiff reported] could plausibly suggest that Protega was defrauding the government." Def's Br. at 6. The point of Defendant's argument is unclear. To the extent Defendant maintains the FCA retaliation claim must be dismissed because Plaintiff did not plead the "magic words" that another employee in her

---

[2] Under the AKS, "remuneration" is defined very broadly. "Congress's intent in placing the term 'remuneration' in the statute in 1977 was to cover the transferring of anything of value in any form or manner whatsoever. The statute's language makes clear that illegal payments are prohibited beyond merely 'bribes,' 'kickbacks,' and 'rebates,' which were the three terms used in the original 1972 statute. The language 'directly or indirectly, overtly or covertly, in cash or in kind' makes clear that the form or manner of the payment includes indirect, covert, and in-kind transactions. Moreover, the statutory exception for discounts demonstrates that Congress prohibited transactions where there is no direct payment at all from the party receiving the referrals." OIG Anti-Kickback Provisions, 56 Fed. Reg. 35952, 35958 (July 29, 1991); *see also, New York v. MedImmune, Inc.,* 342 F. Supp. 3d 544, 552-553 (S.D.N.Y. 2018) (collecting cases). Notably, Defendant does not argue that either exorbitant meals or nude photographs cannot be considered "renumeration" under the AKS. *See generally* Def's Br.

circumstances would have reached the same conclusion she did, such is not the law. Instead, at the pleading stage, the Complaint as a whole must plead facts from which the inference may be drawn that Plaintiff's belief was objectively reasonable such that another employee in her position "might" reach the same conclusion she did. *Beckles-Canton*, 2021 U.S. Dist. LEXIS 135371, at *12. For all of the reasons discussed above, Plaintiff's complaint does exactly that.

Moreover, courts in this Circuit have held that employees who report falsified records, sham compliance, or thinly veiled kickback schemes plausibly allege protected activity, even where the legality of the underlying conduct is later disputed. See, e.g., *Beckles-Canton*, 2021 U.S. Dist. LEXIS 135371, at *16 (plaintiff shows objectively reasonable basis for believing she was reporting viable FCA claims when she reported falsification of invoices for approved purchases.); *Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 100-101 (2d Cir. 2019) (a reasonable sales representative, seeing falsified compliance documentation and undisclosed transfers of value to prescribers of medications covered by federal programs, would believe she was witnessing an AKS-driven kickback scheme and the submission of false claims; and where plaintiff alleged that she observed what appeared to be improper marketing that appeared to be a thinly veiled kickback scheme satisfied the objective prong of the protected activity test); *United States ex rel. Sasaki v. N.Y. Univ. Med. Ctr.*, 2012 U.S. Dist. LEXIS 8672 (S.D.N.Y. 2012). For all these reasons, Plaintiff has satisfied her pleading burden on the objective prong of § 3730(h)'s protected activity test.

### 3. Plaintiff's Complaints Were Connected to Her Belief that She Witnessed FCA Violations

Finally, Defendant argues that Plaintiff is "not entitled" to FCA protections because, according to Defendant's stilted reading of the complaint, Plaintiff's complaints were "clearly motivated by her own desire for a promotion and jealousy of Ms. Kraszewski" and detached from the purposes of the FCA. Defendant's argument has absolutely no basis. As stated above, Plaintiff

reasonably and in good faith believed that she had observed violations of the PPSA and the AKS. *See supra* at 6-11. And the Complaint explicitly states Plaintiff's understanding that these violations could lead to downstream FCA liability. Compl. ¶¶ 32-33, 41-45, 69, 97-103.

Plaintiff specifically alleges that she "made clear" when making her reports to Sweet, Howe and HR was that Kraszewski's conduct, as described above, may violate the PPSA and AKS. Compl. ¶¶ 32-33, 37, 41-47. As set forth above, claims for payment on the Government (such as Medicare reimbursements for RoxyBond prescriptions) that include "items or services resulting from a violation of [the AKS]" are false or fraudulent for purposes of the FCA. 42 U.S.C. § 1320a-7b(g). Even if Plaintiff's actions were not "in furtherance" of a *qui tam* suit, she is still protected so long as she engaged in "efforts to stop" what she reasonably believed were FCA violations. Here, Plaintiff internally reported falsification of documents required to report accurate data pursuant to the PPSA, and AKS-violative conduct to her supervisor, Protega's COO, and HR. Despite management's indifference, Plaintiff persisted in raising concerns about fabricated sign-in sheets and sexually charged inducements to prescribers. Repeated internal complaints about suspected falsification of compliance records and kickbacks are paradigmatic "efforts to stop" FCA violations. This is particularly true in a regulated industry such as opioid pharmaceuticals where companies submit claims to federal health care programs. *See United States ex rel. Perri v. Novartis Pharms. Corp.*, 2020 U.S. Dist. LEXIS 66588, at *19 (D. N.J. 2020).

Defendant cites cases easily differentiated from the present case. In *Adiram v. Catholic Guardian Servs.*, 2015 U.S. Dist. LEXIS 130111, 2015 WL 5706935, at *5 (E.D.N.Y. Sept. 28, 2015), the plaintiff's main concern when reporting wrongdoing was the health and welfare of the individuals with special needs who were residents of the housing provided by the defendant – not

13

the financial fraud she observed. *Adiram v Catholic Guardian Servs.*, 2015 US Dist LEXIS 130111, at *13 (E.D.N.Y. 2015).

In *Moor-Jankowski v. Bd. of Trustees of NY Univ.*, 1998 U.S. Dist. LEXIS 12305 (S.D.N.Y. 1998), the plaintiff's "complaint [made] clear that exposing a fraud upon the government within the meaning of the FCA was not [the plaintiff's] motivation in protesting the treatment of the monkeys used in [NYU's] research." *Id.* Rather, the plaintiff's activities were "aimed only at getting NYUMC to bring all research at NYUMC facilities into compliance with the [Animal Welfare Act]." *Id.* There, the complaint lacked any well-pleaded allegations to connect these activities to any financial fraud, the court found that the plaintiff had not pleaded any protected activity. *Id.*

Here, in contrast to *Adiram* and *Moor-Jankowski*, Plaintiff's Complaint repeatedly connects her concerns to potential violations of the PPSA and AKS, which could result in Protega's exposure to FCA liability. Compl. ¶¶ 41-45, 48, 53, 55, 97, 99, 102.[3] Accordingly, Defendant's argument that Plaintiff did not adequately connect her complaints to fraud on the Government is baseless.

### B. PLAINTIFF PLAUSIBLY ALLEGES RETALIATION UNDER N.Y. LAB. LAW § 740

The N.Y. Lab. Law § 740 whistleblower protection is broader than the FCA. As amended in 2022, § 740 protects employees who "reasonably believe" their employer is violating *any* law, rule, or regulation, or engaging in conduct posing a substantial and specific danger to public health

---

[3] The other case Defendant cites, *Hopper v. Anton,* 91 F.3d 1261 (9th Cir. 1996), is completely inapplicable here. *Hopper* is a decision on an appeal in the 9th Circuit from a summary judgement in a qui tam case. *Hopper*, 91 F.3d 1261. Further, the case is no longer good law. There, the court ruled that the lower court erred in refusing to grant defendant's motion for judgement because there was no substantial evidence that the plaintiff engaged in protected activity – which at the time of the case was limited to actions "investigating matters which are calculated or reasonably could lead, to a viable FCA action." *Hopper*, 91 F.3d at 1269 (internal citations omitted). After the 2009 amendments to section 3730(h), protected activity also includes "efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h).

or safety. N.Y. Lab. Law § 740(2). A plaintiff need only show "that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated th[e] law." *Passoni v. Early Warning Servs., LLC*, 2025 U.S. Dist. LEXIS 124149, at *9 (E.D.N.Y. 2025) ((quoting *Ibela v. Allied Universal*, 21-1995, 2022 U.S. App. LEXIS 12155 (2d Cir. May 5, 2022)). Thus, at the pleading stage, Plaintiff need only allege that she had a reasonable belief that Protega was either (a) violating some statute or regulation or (b) endangering public health, and that she suffered an adverse action for reporting or opposing that conduct. *Id*.

For the same reasons stated above that Plaintiff plausibly alleges that she reasonably believed she was reporting PPSA and AKS violations, and thus engaged in protected activity under the FCA retaliation provision, Plaintiff's allegations also readily meet the "reasonable belief" pleading standard of NYLL § 740. *See supra* at 6-11.

Specifically Plaintiff alleges that Protega markets an opioid drug heavily reimbursed by Medicare. Compl. ¶ 44. Plaintiff states that Kraszewski, a senior leader at Protega, intentionally mis-reported transfers of value to health care providers in violation of the PPSA. Compl. ¶ 32-33. Plaintiff further alleges that Kraszewski sent target physicians nude photos of herself in order to induce them to prescribe Protega drugs. Compl. ¶ 41-43. Because the AKS bans the exchange of anything of value in return for generating business that involves federal healthcare programs like Medicare, Plaintiff reasonably believed that the provision of lascivious photographs was an improper inducement to prescribe. In addition, Plaintiff reported these violations to her supervisor, Protega's COO, and HR. Plaintiff's reports to Protega suffice to "identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." *Komorek v. Conflict Intl., Inc.*, 2024 U.S. Dist. LEXIS 64127, at *15 (S.D.N.Y. 2024) (internal citations omitted).

Further, as discussed below, Plaintiff alleges and reported to Protega that Kraszewski had created a hostile work environment pervaded with sexually charged interactions with colleagues and target physicians in violation of the NYSHRL and NYCHRL. *See infra* at 16-21.

In similar circumstances, courts have found such complaints sufficient to support a Section 740 claim. *Passoni*, 2025 U.S. Dist. LEXIS 124149, at *23 (plaintiff complained of, and refused to participate in, "an activity, policy or practice of the employer that is in violation of law, rule or regulation" and then was terminated); *Wooding v. Winthrop Univ. Hosp.*, 2017 U.S. Dist. LEXIS 90559, at *42 (E.D.N.Y. 2017) (plaintiff sufficiently plead N.Y. Lab. Law § 740 claim where employer terminated him quickly following complaint of unlawful conduct)

Finally, Defendant's argument that Plaintiff failed to plead a "substantial and specific danger to public health or safety" misses the mark as Plaintiff's § 740 claim is not premised on that prong of the statute. Instead, Plaintiff's § 740 claim is premised on her reasonable belief that the conduct she observed violated the AKS, the Sunshine Act, and "sexual misconduct." Compl. ¶ 110. Pursuant to the 2022 amendment to NYLL § 740, an employee need only allege that she disclosed, or threatened to disclose, an activity, policy, or practice that defendant was engaging in which she reasonably believed either violated a law rule or regulation. NYLL § 740(2). A plaintiff does not need to *also* allege that such practice had a "substantial and specific danger to public health or safety." Plaintiff has met her pleading burden as to N.Y. Lab. Law § 740.

## C. PLAINTIFF PLAUSIBLY ALLEGES GENDER DISCRIMINATION/HOSTILE WORK ENVIRONMENT UNDER THE NYSHRL AND NYCHRL

Under the NYCHRL, a plaintiff need only allege that she was treated "less well" at least in part because of a protected characteristic. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). The NYSHRL, as amended, is construed liberally and in parallel with the NYCHRL. *See, e.g.*, *Hernandez v. DiaSorin Inc.*, No. 25-cv-846, 2025 U.S. Dist. LEXIS

264253, at *8-9 (S.D.N.Y. Dec. 22, 2025) (citing cases). Under the NYSHRL, "harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories." N.Y. Exec. Law § 296(1)(h). The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather both are governed by the same antidiscrimination provision, N.Y.C. Admin. Code § 8-107(1)(a). *See Nguedi v. Fed. Reserve Bank of N.Y.*, 813 Fed. App'x 616, 617-18 (2d Cir. 2020).

Myopically reading the Complaint, Defendant argues that Plaintiff's gender discrimination claims fail because she alleges only "favoritism based on [the] consensual romantic relationship" between Kraszewski and Schulte, and such "paramour preference" does not constitute gender discrimination. *See* Def's Br. at 9-10. Contrary to Defendant's suggestion, this is not a pure "paramour preference" case in which a single consensual relationship leads to more preferential treatment of a paramour over an employee of the opposite sex. Indeed, both Plaintiff's NYSHRL and NYCHRL claims allege that Plaintiff was also discriminated against based on her gender through the creation of a hostile work environment. *See* Compl. ¶¶ 117, 128. Plaintiff alleges that Protega was rife with open, sexual behavior from both colleagues and target physicians that created a highly sexually charged environment. Plaintiff further alleges that Protega explicitly condoned this sexualization of the workplace, rewarded women like Kraszewski who participated in sexualized conduct, and punished women like Plaintiff who objected to it. These allegations are more than sufficient to state a claim under the liberally construed NYCHRL and NYSHRL.

Specifically, the Complaint alleges that Protega tolerated a highly sexualized workplace and that women who participated in sexualized behavior were favored and those who opposed such conduct were punished. First, Kraszewski engaged in a sexual relationship with her male

Case 1:25-cv-07007-ALC     Document 21     Filed 01/16/26     Page 23 of 27

subordinate, Schulte, who then openly discussed with Plaintiff his graphic communications and interactions with Kraszewski. Compl. ¶¶ 21-23, 74. Kraszewski, for her part, cultivated a sexually charged work environment – sending nude photographs to key prescribers, wearing highly provocative clothing at business meetings, describing how various doctors had propositioned her, and encouraging discussion about her body and sexual availability at work. Compl. ¶¶ 35-40, 46, 67-70. Kraszewski even discussed her sexually charged interactions with doctors at an April 2025 work event in front of Protega's leadership, including Christy Sweet, Protega's National Business Director, who "did nothing to stop it." *Id.* ¶¶ 66-70. This was so even though Plaintiff had complained to Sweet months earlier, in February 2025, that she was "highly uncomfortable with the inappropriate sexual banter" taking place at work events. Compl. ¶ 47; *see also id.* ¶ 30, 46. In fact, the only consequences of Plaintiff's complaint to Sweet fell on Plaintiff herself – her colleagues "stopped responding to her communications" and "became silent" around her. *Id.* ¶¶ 59-62.

When Plaintiff escalated her concerns to Protega's COO, Paul Howe, by informing him of her "extreme discomfort with Ms. Kraszewski's sexual banter and the sexually charged environment that it created," *id.* ¶ 78, he attacked Plaintiff, accusing her of being "jealous" of Kraszewski and explaining that Kraszewski was "doing great" and was "not going anywhere," *id.* at 80, 82. Finally, when Plaintiff went to HR to report Kraszewski's "improper behavior," Protega, led by Howe, turned Plaintiff's own complaints back on her, accusing her of discussing Kraszewski's "naked pictures in front of other employees," *id.* ¶ 86, and firing her "because of her communications to coworkers concerning Kraszewski's . . . sexually inappropriate conduct," *id.* ¶ 91.

These allegations depict a workplace permeated with sexualized conduct, where women who tolerate or participate in lewd behavior are rewarded while women who object to it are punished. Kraszewski's behavior and Protega's tolerance of it, disadvantaged women, such as Plaintiff, who did not want to participate in that type of sexual behavior. Under NYCHRL's broad standard, this is more than sufficient at the pleading stage to plausibly support an inference of gender-based discrimination for two reasons.

First, when Howe accused Plaintiff of being "jealous" of Kraszewski, he clearly revealed his perspective that he condoned of Kraszewski's behavior and could not fathom why Plaintiff would complain about it unless she were envious of Kraszewski. This statement alone reveals Protega's bias against women, like Plaintiff, who desire a workplace free of objectification and sexualization. *See Shkoza v. NYC Health & Hosps. Corp.*, 2021 U.S. Dist. LEXIS 181153, at *14-15 (S.D.N.Y. 2021) (even "a single comment that objectifies women . . . made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable") (internal citations omitted); *Hernandez v. Kaisman*, 103 A.D.3d 106, 115, 957 N.Y.S.2d 53 (1st Dep't 2012) (employer's tolerance of emails objectifying women's bodies clearly signaled that defendant considered it appropriate to foster an office environment that degraded women).

Second, when an employer tolerates, encourages, and rewards those women who exhibit sexually explicit behavior and punishes those women who object to such behavior, it necessarily creates an environment in which female employees' worth is judged by their sexuality, which is inextricably linked to their gender. *Cf. Smith v. City of Salem*, 369 F.3d 912, 920 (6th Cir. 2004) ("[A]n employer who discriminates against women because, for instance, they do not wear dresses or makeup, is engaging in sex discrimination because the discrimination would not occur but for

19

the victim's sex."); *Yanowitz v. L'Oreal USA, Inc.*, 106 Cal. App. 4th 1036, 1053 (Cal. App. 2003) ("The notion that an employer may not insist on only attractive women employees has long been established."); *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 355 (3d Cir. 1999) (illegal for an employer to "act on gender-based stereotypes, firing women it perceives as not feminine enough (or as too feminine)"); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 862 (3d Cir. 1990) (suggesting that an atmosphere "might have discriminated against plaintiff if sexual discourse displaced standard business procedure in a way that prevented plaintiff from working in an environment in which she could be evaluated on grounds other than her sexuality").

In sum, Plaintiff has adequately alleged claims of gender discrimination/hostile work environment under both the NYCHRL and NYSHRL.

### D. PLAINTIFF PLAUSIBLY ALLEGES RETALIATION UNDER THE NYSHRL AND NYCHRL

To state a claim for retaliation under the NYCHRL, a plaintiff needs to show only that they "took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 112 (2d Cir. 2013). Here, Defendant argues that Plaintiff cannot state a claim of retaliation because she does not adequately allege that she engaged in protected activity. Def's Br. at 12. Specifically, again myopically reading the Complaint, Defendant claims (incorrectly) that the only complaints Plaintiff made were about "non-actionable paramour preference." *Id.*

As the recitation detailed above demonstrates, this simply is not so. The Complaint alleges that Plaintiff repeatedly complained of the "sexual banter" and "the sexually charged environment." Compl. ¶¶ 47, 78, 86. One of the very cases upon which Defendant relies— *Fattoruso v. Hilton Grand Vacations Co.*—demonstrates that Plaintiff's complaints about

Krazewski's affair with her coworker and sexualized behavior constitutes protected activity under the NYCHRL. In *Fatturoso*, somewhat similar to here, the male plaintiff alleged that another male employee was engaged in a sexual relationship with a female co-worker and that he found the conduct of that male employee to be "offensive" and "created a hostile work environment." 525 Fed. App'x 26, 27 (2d Cir. 2013). He also alleged that, as a man, he was discriminated against could not participate in the benefits afforded to the female employee who entered into the relationship with the male coworker. *Id.* The Second Circuit found that these allegations "adequately alleged that [the plaintiff] had a reasonable belief that he was opposing illegal practices based on sex." *Id.* The Circuit found, however, that the plaintiff's retaliation claim failed because when the plaintiff complained, he *only* raised the issue of the consensual relationship (which the Circuit found not to be illegal because of the "paramour preference" line of cases), not the other issues, and thus failed to place the employer on notice of his reasonable belief he was opposing gender discrimination. *See id.* at 27-28.

Here, Plaintiff similarly reasonably believed that the sexualized atmosphere Kraszewski created and Protega tolerated, along with her inability, as a woman, to gain the benefits afforded to Schulte through his consensual relationship with Kraszewski, constituted illegal gender discrimination. *See* Compl. ¶¶ 47, 64, 70, 78, 86, 128. Unlike in *Fatturoso*, however, Plaintiff's complaints about Kraszewski's conduct consisted of more than just her consensual relationship with Schulte—they also included complaints about her "sexual banter," the "sexually charged working environment," and Kraszewski's retaliation against her since she raised her first complaint about these issues. Compl. ¶¶ 47, 78-9, 90. Thus, because, as in *Fatturoso*, Plaintiff reasonably believed that the conduct she opposed constituted violations of the NYCHRL and NYSHRL, and because, unlike in *Fatturoso*, she put Protega on notice of the totality of her complaints, not just

21

the consensual relationship between Kraszewski and Schulte, she states a claim of retaliation under the NYSHRL and NYCHRL.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just and proper. Even if the Court were to identify any pleading deficiencies—which Plaintiff respectfully submits it should not—dismissal with prejudice would be unwarranted. No discovery has occurred, and any purported deficiencies would be readily curable.


Dated: New York, New York
       January 16, 2026


                              By:    /s/Leah Seliger
                                     D. Maimon Kirschenbaum
                                     Leah Seliger
                                     Lucas C. Buzzard
                                     JOSEPH & KIRSCHENBAUM LLP
                                     32 Broadway, Suite 601
                                     New York, NY 10004
                                     212-688-5640
                                     *Attorneys for Plaintiff*